[Civ. No. 25125.    Second Dist., Div. One.    July 10, 1961.]

HENRIETTA M. PEISER et al., Plaintiffs, v. WILLIE H. METTLER, Appellant; JACK FRY et al., Respondents.

Walter L. Maas for Appellant.

Vizzard, Baker, Sullivan & McFarland and James Vizzard for Respondents.

WOOD, P. J.—This is an action by owners of a ranch for damages for removal of buildings and other alleged fixtures in violation of the terms of a lease. Plaintiffs obtained judgment against defendants, who are the lessee and the assignees of the lessee's interest in the lease.

Plaintiffs are owners of a section of land (in Kern County) which was leased to defendant Mettler in 1945 for approximately five years. Mettler moved a three-room house onto the east-half of the land (ranch).

Thereafter, in September 1946, Mettler sublet the ranch to defendants Fry. During the next month (October), the defendants Fry purchased a military barracks building, cut it into three parts, moved the parts onto the east-half of the ranch, and constructed two houses (dwellings) and a utility building therefrom.

On March 15, 1947, Mettler assigned the whole lease to

defendants Fry, who thereafter moved the last-mentioned three buildings (2 houses and utility building) from the east-half of the ranch onto the west-half thereof.

In February 1949, defendants Fry sublet the east-half of the ranch to defendant Garner, who constructed a utility building thereon. In 1950, defendants Fry exercised the option (referred to in the original lease) to renew the lease for five years.

In 1955 when the lease terminated, the defendants Fry removed the two houses and the utility building from the west-half of the ranch, and they also removed a water pump which they had placed on that part of the ranch. Also, at that time, the defendant Garner removed the three-room house and the utility building from the east-half of the ranch, and he also removed a water pump which he had placed on that part of the ranch.

Defendant Mettler, by cross-complaint, had sought to compel defendants Fry to pay any judgment which might be obtained against him in the action. Defendants Fry, by cross-complaint, had sought to compel Mettler to pay any judgment which might be obtained against them in the action.

The judgment which plaintiffs obtained was (1) against Mettler and the Frys for $6,400; (2) against Mettler, the Frys, and Garner for $1,900; and (3) against Mettler for $4,000 as attorney's fees. Further provisions of the judgment were to the effect that, by reason of the cross-complaints, Mettler was entitled to recover $2,500 from the Frys, and that the Frys were entitled to recover $5,800 from Mettler; provided, however, that said amount, payable to each cross-complainant, should "become due and payable only in the event that and to the extent which" each defendant's liability to plaintiffs "is discharged by payment to plaintiffs." Apparently (as indicated by appellant's brief and the memorandum of decision by the trial judge) the provisions of the judgment with reference to the cross-complaints were intended to designate the respective amounts of the judgment to be paid by Mettler and the Frys. The brief and memorandum indicate that the portion of the judgment for $8,300 damages (for removal of buildings and pumps) was apportioned so that (1) Mettler was required to pay $5,800 as damages (for buildings and pumps removed by the Frys), and to pay $2,795.45 as attorney's fees; and (2) the Frys were required to pay $2,500 as damages (for the utility building and the pumps removed by Garner), and $1,204.55 as attorney's fees.

Mettler paid to plaintiffs the amounts he was required to pay by such apportionment of the judgment. The Frys paid to plaintiffs the amounts they were required to pay by such apportionment.

It thus appears that plaintiffs' judgment has been paid. Plaintiffs are not parties to this appeal.

Mettler appeals from the portion of the judgment based on the cross-complaints. The appeal is not directed to any portion of the judgment in favor of plaintiffs.

Mettler's contention on appeal is that he was entitled to recover from the Frys, under his cross-complaint against them, the full amount of the judgment which plaintiffs obtained against him.

The lease provided that upon its termination all pumps installed and "all other improvements of a substantial or permanent character, or that may be attached to the land" should become the property of the lessor. It also provided that in the event lessee assigned the lease he would remain liable for the performance of all obligations of the lessee unless the written consent of the lessor to the assignment was obtained.

The assignment (on March 15, 1947) by defendant Mettler to defendants Fry included a provision that defendants Fry would pay all rentals, would keep and perform all covenants and conditions to be performed by Mettler under the lease, and would hold Mettler "free and blameless from payment of said rentals and performance of said covenants and conditions" of the lease. It also included a provision that Mettler did thereby sell to the defendants Fry all "portable, removable buildings heretofore placed upon the leased premises" by Mettler.

On March 15, 1947 (the same day the assignment was made), Mettler wrote a letter to defendants Fry, which letter (signed by Mettler) was as follows:

"With reference to the Assignment of Lease entered into on March 15, 1947, between Willie H. Mettler, assignor, and Opal W. Fry and Jack Fry, Assignees, covering [legal description contained therein omitted here], it is mutually understood and agreed by all parties concerned that you may remove from the premises at the expiration or termination of said lease, buildings erected at your expense."

The judgment in favor of plaintiffs was based upon a breach of the provision of the lease relative to removal of improvements.

The cross-complaint of Mettler was based upon the provision of the assignment of the lease whereby the Frys agreed to hold Mettler blameless with respect to the provisions of the lease.

The cross-complaint of the Frys was based upon the letter of March 15, 1947, written by Mettler, wherein Mettler stated that the Frys might remove the buildings which were erected at their expense.

The court found, as follows: By the terms of the assignment the defendants Fry assumed all the obligations of Mettler under the lease. Plaintiffs did not consent to the assignment, and Mettler remained liable for performance of the obligations of the lease. The pumps and buildings were substantial and permanent improvements and were attached to the land. Mettler wrote a letter to defendants Fry on March 15, 1947. By that letter Mettler agreed to hold defendants Fry "harmless in respect to removal" by them of any building erected by them on the land. Defendants Fry, by reason of the transactions between Mettler and said defendants, are required to indemnify Mettler against any claim by plaintiffs as to the pumps and as to the buildings "of Garner." The three-room house (placed on the land by Mettler, and thereafter removed to the east-half of the property) is not a building "as to which plaintiffs have made any claim in this action."

As above indicated, Mettler did not remove any of the buildings or pumps. His liability to plaintiffs for the removal of such improvements was by reason of the provisions in the lease whereby he agreed that such improvements should become the property of the owner. The Frys and Garner removed the improvements. The liability of the Frys to plaintiffs was by reason of their removal of some of the improvements, and by reason of their acceptance of the assignment of the lease with notice of the terms thereof. The liability of Garner was by reason of his removal of some of the improvements, and by reason of his obligations as assignee of a part of the Frys' interest in the lease.

Also, as above indicated, Mettler asserted (under his cross-complaint) that since the Frys agreed (in the assignment) to hold him harmless under the lease, the Frys should be held liable to him for any judgment the plaintiffs might obtain against him. The Frys asserted (under their cross-complaint) that by reason of Mettler's letter to them (written on the same day the assignment was made) Mettler should be held

liable to them for any judgment the plaintiffs might obtain against them by reason of the removal of *buildings*.

■■■ Mettler, the appellant, asserts that the issue on appeal is whether the letter (dated March 15, 1947) from him to the Frys was an agreement by him to release the Frys from their "hold harmless" agreement in the assignment, and whether the letter was an agreement by him to hold the Frys harmless in the event they should remove buildings. He argues that unless the letter contains the fundamental requirements of a binding agreement between him and the Frys, there is liability on the part of the Frys, under the "hold harmless" provisions of the assignment, to reimburse him for the portion of plaintiffs' judgment which he was required to pay. He argues further that there was no consideration for the letter—that the Frys did not do or forego or give anything in exchange for Mettler's letter and there was no promise on the part of the Frys in return for the promise of Mettler.

As above shown, the assignment of the lease was made on March 15, 1947, and the letter from Mettler was written the same day. The letter refers to the assignment of lease entered into on March 15, 1947. Defendant Jack Fry testified that he thought that the letter was signed at the same time the assignment was made. Defendant Mettler testified that he thought that the letter and the assignment were written at the same time. It is apparent that those two documents were part of the same transaction. The assignment of the lease contained a provision that the consideration for the assignment was $106,965.04. The buildings which were removed were buildings that were erected on the land by the Frys while they were sublessees of Mettler (before they became assignees of the lease). The assignment of the lease provided that the Frys would hold Mettler blameless with respect to payment of rentals and performance of the covenants of the lease. One of such covenants was that at the termination of the lease all improvements of a permanent character should become the property of the owner of the land. Since the Frys had placed buildings on the land before the assignment of the lease was made, it is apparent that they were concerned at the time of the assignment transaction as to whether they might remove such buildings. It is true that the assignment of the lease does not make an exception of those buildings. As above shown, however, the letter of Mettler with reference to allowing the Frys to remove those buildings was written at the

time the assignment was made and was a part of the assignment transaction for which the whole money consideration was $106,965.04. The trial court's memorandum opinion stated that the $5,800 to be recovered by the Frys from Mettler was based on Mettler's letter. The court found that the letter was in effect an agreement by Mettler to hold the Frys harmless in the event they removed buildings which had been erected by them. "A written instrument is presumptive evidence of a consideration." (Civ. Code, § 1614; see Code Civ. Proc., § 1963, subd. 39.) It does not appear that appellant Mettler attempted to prove there was no consideration for the letter. The right to remove buildings was a substantial matter, and it might well be that the Frys would not have taken the assignment if the letter had not been written. It can reasonably be concluded that the consideration recited in the formal part of the assignment included the consideration for the letter part of the assignment transaction.

■  Appellant contends further that the court erred in sustaining an objection to a certain question. While defendant Jack Fry was testifying on cross-examination, he was asked (by counsel for Mettler) if, during the discussions in which he asked for the letter, he stated to Mettler that he contemplated moving the buildings off the property. Counsel for the Frys objected to the question on the ground that it was immaterial. The judge said: "It does not make any difference, counsel. Objection sustained." Appellant argues on appeal, with reference to the ruling, that the testimony sought by the question pertained to the circumstances of writing the letter and was admissible as an aid in the proper construction of the letter. Prior to that ruling, the witness had been asked (by counsel for the Frys) what the discussion was with reference to the preparation of the letter. The answer of the witness was to the effect that there was a request for a letter, and he thought the letter gave the permission to move the buildings, and that he did not remember any further discussion. It also appears that prior to said ruling, counsel for Mettler asked the witness whether he expressed to Mettler an intention to take the building off the property. The witness replied: "I think the letter so indicates." It is to be noted further that after said ruling, counsel for the Frys asked Mettler whether or not he was referring in that letter to buildings he had placed on the property before the assignment. Thereupon, counsel for Mettler said: "I think again the instrument speaks for itself." The court did not err in sustain-

ing the objection to the question which is the subject of this contention.

The portion of the judgment from which the appeal is taken is affirmed.

Fourt, J., and Lillie, J., concurred.